CITY of FORT SMITH *v.* J.D. CARTER, Mary Lois Carter,
Lee Hackler, and Patricia Hackler

07-220                                                    270 S.W.3d 822

Supreme Court of Arkansas
Opinion delivered January 10, 2008

*Daily & Woods, P.L.L.C.*, by: *Robert R. Briggs*, for appellant.

*Bagby Law Firm, P.A.*, by: *Philip A. Bagby*, for appellees.

ANNABELLE CLINTON IMBER, Justice. The instant appeal arises out of a dispute as to whether a circuit court can award attorney's fees to a mortgagee of condemned property taken by eminent domain, under Arkansas Code Annotated § 18-15-605(b) (Repl. 2003). Two years ago, we heard a previous appeal of the same matter in *City of Fort Smith v. Carter*, 364 Ark. 100, 216 S.W.3d 594 (2005). Upon remand, the circuit court ordered the City of Fort Smith to pay attorney's fees to J.D. and Mary Lois Carter, the owners in possession of the condemned property, and Lee and Patricia Hackler, the mortgagees of the property. The City now appeals the circuit court's order with regard to the Hacklers. The City argues that section 18-15-605(b) does not provide for an award of attorney's fees to mortgagees of condemned property. The Hacklers cross-appeal,

asserting that the circuit court was correct in awarding them attorney's fees, but the lower court erred in not awarding them the full amount of fees requested. Because we find merit in the City's argument on direct appeal, we do not address the Hacklers' cross-appeal.

The City of Fort Smith operates a water supply utility that accumulates water in Lake Fort Smith. In 2002, the City chose to acquire certain land in the area around Lake Fort Smith in an effort to expand the lake. One of the parcels to be acquired was a twenty-acre tract that was titled in the name of J.D. and Mary Lois Carter. Less than a year earlier, the Carters purchased the land from Lee and Patricia Hackler for the purchase price of $60,000. The Hacklers held a mortgage on the land to secure the Carters' outstanding debt.

On April 3, 2002, the City filed a petition for order of immediate possession, under Arkansas Code Annotated § 18-15-409, and deposited a sum of $14,000 with the Crawford County Circuit Court. The circuit court entered an *ex parte* immediate order of possession, and the Hacklers and the Carters responded, arguing that the City's valuation of the property at $14,000 was deficient. After a trial, a jury found that the reasonable value of the property was $30,000 and awarded compensation in that amount, plus interest. The Carters and the Hacklers then filed a motion for attorney's fees under Arkansas Code Annotated § 18-15-605(b). The circuit court declined to grant an award pursuant to the statute, but found that the Carters and the Hacklers were entitled to an award under Rule 11 of the Arkansas Rules of Civil Procedure.

The City appealed the circuit court's order to this court in *City of Fort Smith v. Carter, supra.* We determined that the City's actions were not subject to sanctions under Rule 11, and then addressed the Carters and the Hacklers' argument on cross-appeal. They contended that the circuit court erred in denying them attorney's fees under section 18-15-605(b) because the term "corporation" in the statute applied to all corporations, including municipal corporations. The City disagreed, arguing that the statute only applied to private corporations. This court held the term "corporation" to be ambiguous, and construed the statute in favor of the landowners, pursuant to our well-settled rules governing the interpretation of eminent-domain statutes. We reversed and remanded the case for the circuit court to determine (1) the amount of attorney's fees due the Carters under section 18-15-

605(b) and (2) whether the Hacklers qualified as "landowners" — a prerequisite for the award of attorney's fees under the statute.[1]

On remand, the circuit court held a hearing at which the Hacklers claimed they should be considered "land owners" under section 18-15-605 because as mortgage holders they had an interest in the title to the property. The City, however, argued that although the Hacklers had an interest in the property it was not an ownership interest in the context of the statute because the eminent-domain statutes did not contemplate that a mortgagee could be a landowner of property. The circuit court agreed with the Hacklers and entered an order awarding both the Carters and the Hacklers attorney's fees. The City then filed the instant appeal challenging the circuit court's order with regard to the Hacklers.

The instant case involves our interpretation of section 18-65-105. We review matters of statutory interpretation de novo. *See CJ Building Corp. v. TRAC-10*, 368 Ark. 654, 249 S.W.3d 793 (2007). We have repeatedly held that attorney's fees are not allowed except where expressly provided for by statute. *See id.* The first rule of statutory construction is to apply a plain reading to the statute, construing it just as it reads, by giving the words their ordinary and usually accepted meaning in common language. *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002). When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.* This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

---

[1] In the instant appeal, the Hacklers make a *res judicata* argument, asserting that in the previous appeal this court determined that section 18-15-605(b) was applicable to the Hacklers as mortgagees. The Hacklers misread our holding in that opinion. While we determined that section 18-15-605(b) did apply to municipal corporations and did decide that the Carters were "landowners" under the statute, we left the determination of whether the Hacklers, as mortgagees, were "landowners" to the circuit court on remand.

Act 1207 of 1995, Ark. Code Ann. §§ 18-15-601 through 18-15-607 (Repl. 2003 & Supp. 2007), was enacted to enable municipal corporations to expand their water supply facilities through eminent domain. A municipality may obtain an order of immediate possession of the property by filing a petition with the circuit court, in the county where the property is located, and depositing with the court a sum, which in its opinion, is the reasonable value of the property to be taken. *See* Ark. Code Ann. § 18-15-409(a)(2) (Repl. 2003). Ark. Code Ann. § 18-15-605 provides for an award of attorney's fees in certain cases when a jury decides that the deposit made by the petitioning municipality is less than the reasonable value of the land. *See id.* Specifically, section 18-15-605(b) states,

> In the case of application for orders of immediate possession by the corporation or water association, if the amount awarded by the jury exceeds the amount deposited by the corporation or water association in an amount which is more than twenty percent (20%) of the sum deposited, the *landowner* shall be entitled to recover the reasonable attorney's fees and costs.

*Id.* (emphasis added). The dispute in the instant case hinges upon the meaning of the term "landowner" in section 18-15-605(b).

The City argues that the term "landowner" describes the traditional view of a real property owner as the person who has title to the land and the possessory right to occupy the land. The Hacklers, on the other hand, contend that a mortgagee has legal title to the mortgaged property and is therefore a landowner for purposes of the statute.

■ By applying a plain reading to the term "landowner," it is apparent that the term does not describe the Hacklers as mortgagees of the property. In *Black's Law Dictionary* (8th ed. 2004), the term "landowner" is defined as "one who owns land." *Id.* at 895. This definition of "landowner" does not contribute much to our analysis; however, the definition of the general term "owner" does lend to our inquiry. The term "owner" is defined as "one who has the right to possess, use, and convey something; a person in whom one or more interests are vested." *Id.* at 1137. Moreover, in common parlance "owner" is defined as one who "possesses property." *Oxford American Dictionary* 590 (2d ed. 2001). Thus, it is clear that the common understanding of the term "landowner" is someone who is entitled to possess and convey land.

Our court has long held that despite the fact that a mortgagee has legal title to the mortgaged land, the mortgagee does not have absolute title thereto and does not have the right to possess the land until the mortgagor defaults on the mortgage. In *Moore v. Tillman*, 170 Ark. 895, 282 S.W. 9 (1926), we clearly stated that a mortgagee possesses a security interest and is not an absolute owner of the property:

> [A] mortgage of lands is not a conveyance thereof carrying the absolute and unrestricted title thereto. *On the contrary, while a mortgage at law does carry the legal title, it is not, either at law or in equity, an absolute, unconditional, and indefeasible title.* It becomes such only after the mortgagor has breached the condition of the mortgage and his equity of redemption has been foreclosed. In other words, while the legal title under the law does vest in the mortgagee, still this is only for the purpose of enabling him to obtain security for the satisfaction of the debt or obligation due him by the mortgagor; and, when that satisfaction is obtained, the legal title vests and remains in the mortgagor . . . . *Thus, after all is said and done, a mortgage, in common parlance as well as legal acceptation, is an instrument evidencing a security for debt. . . .*

282 S.W. at 11 (emphasis added). In the instant case, the Hacklers held a mortgage on the condemned property, but at the time that the City filed its condemnation action the Carters had not defaulted on the mortgage, and, therefore, the Hacklers did not have a right to possess the property. Accordingly, the Hacklers were not "landowners" with a right to possess and convey the property as contemplated under section 18-15-605(b).

The Hacklers cite our opinion in *Bank of Oak Grove v. Wilmot State Bank*, 279 Ark. 107, 648 S.W.2d 802 (1983), for the proposition that under Arkansas law a mortgagee has legal title to the mortgaged land, and, therefore the Hacklers, as mortgagees and title holders, were "landowners" here. We disagree. The *Bank of Oak Grove* case involved a conflict-of-laws issue, and, although our court discussed Professor Robert A. Leflar's views concerning mortgage theories in Arkansas, we declined to decide whether Arkansas is a lien theory or title theory state. Thus, because the Hacklers were mortgagees without right of possession to the condemned land under section 18-15-605(b), they were not entitled to attorney's fees under that statute. Accordingly, we

conclude that the circuit court erred in finding otherwise. The circuit court's order awarding attorney's fees to the Hacklers is reversed on direct appeal, and the cross–appeal is dismissed as moot.